134 F.3d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
EMPLOYERS INSURANCE OF WAUSAU, a Wisconsin corporation,
Plaintiff-Counter-Defendant-Appelle,
v.
TRI WORLD INSURANCE AGENCY, INC., Defendant-Counter-Claimant-Appellant,
and
Mohammed Johar; Jim Johar; Mr. J's, Defendants.
 No. 95-55187.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1996.
Decided Jan. 22, 1998.
 
 1
 Before FLETCHER and TASHIMA, Circuit Judges, and RESTANI,** Judge, U.S. Court of International Trade.
 
 
 2
 MEMORANDUM*
 
 
 3
 This case arises out of two lawsuits filed in state court against a California insurance broker, Tri-World Insurance Agency ("Tri-World") which had procured insurance coverage for the clients, alleging that Tri-World negligently obtained general liability policies from a carrier that later failed to pay claims due to insolvency. Tri-World tendered the actions to its errors and omissions carrier, Employers Insurance of Wausau ("Employers"). Employers denied coverage and refused to defend the lawsuits on the basis of an exclusion in the errors and omissions policy barring coverage of claims resulting from an insurer's insolvency. Employers filed suit in federal district court seeking a declaratory judgment that it had no duty to defend or indemnify Tri-World. The district court granted Employers' motion for summary judgment. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 4
 * In late 1990, Tri-World procured a general liability insurance policy from Philadelphia Reinsurance Limited ("Philadelphia") to cover Mr. J's Restaurant in Santa Ana California, owned and operated by Mohammed Johar and Jim Johar ("the Johars"). Mr. J's landlords, Harlan Erickson and Erickson Properties Corporation, ("the Ericksons") were named as additional insureds on the Philadelphia policy. Philadelphia was solvent at the time the Philadelphia policy was issued but was not admitted to transact insurance in California and was not a member of the California Insurance Guarantee Association (CIGA).
 
 
 5
 In early 1992, a personal injury action was filed against the Johars and the Ericksons in Orange County Superior Court. Suarez v. Mr. J's, No. 690747. Philadelphia agreed to defend the Suarez action and appointed defense counsel. In mid-1993, however, Philadelphia became insolvent. As a result of the insolvency, Philadelphia ceased providing coverage or defending the Suarez action. After Philadelphia's insolvency, the Johars and the Ericksons became liable for all remaining defense expenses and damages incurred in the Suarez action. Because Philadelphia was not a member of CIGA, the Johars and the Ericksons could not seek reimbursement from the CIGA fund which protects insureds in the event of the insolvency of member insurers. See Cal. Ins.Code § 1063.1.
 
 
 6
 On March 1, 1994, the Johars filed an action against Tri-World in Orange County, California, Superior Court. Johar v. Tri-World Ins. Agency, No. 726061. The Johar complaint asserted causes of action for "Professional Negligence," "Negligent Misrepresentation" and "Fraud" and sought recovery of $250,000 in costs incurred in the Suarez action. It contended that Tri-World breached its duty of care by failing to procure safe and adequate insurance and by failing to inform the Johars of Philadelphia's non-admitted status and non-membership in CIGA.
 
 
 7
 On March 17, 1994, the Ericksons filed an action against Tri-World in Orange County Superior Court asserting causes of action for "Professional Negligence" and "Fraud and Deceit" and seeking recovery of $96,000 in costs incurred in the Suarez action. Erickson v. Tri-World Insurance Agency, No. 726930. The Erickson complaint asserted that Tri-World breached its duty to find safe and adequate insurance for the Ericksons and failed to advise them that Philadelphia was not admitted to conduct insurance underwriting in California and was not a member of CIGA.
 
 
 8
 In March 1994, Tri-World tendered the defense of the Erickson action to Employers; in June 1994, it tendered the defense of the Johar action to Employers. Employers had issued Tri-World an "Insurance Professionals Errors and Omissions Liability 'Claims Made' Insurance Policy" for the policy period April 18, 1993 through June 6, 1994. The policy covered negligent conduct by Tri-World in the conduct of its business as an insurance broker. On May 3, 1993, however, Tri-World's president signed an insolvency exclusion endorsement which provided that "any claims resulting from the insolvency or bankruptcy of insurance companies, self-insurance trusts, group insurance trusts or other risk-assuming entities are excluded."
 
 
 9
 Employers refused to defend or indemnify Tri-World in the Erickson or Johar actions on the ground that all causes of action alleged against Tri-World resulted from the insolvency of Philadelphia and were therefore excluded from coverage due to the insolvency exclusion.
 
 
 10
 On May 23, 1994, Employers filed suit in federal district court, seeking a declaratory judgment that it was not required to defend or indemnify Tri-World in the Johar and Erickson actions. Tri-World filed a counter-claim seeking a declaration that Employers was required to defend and indemnify Tri-World and seeking reimbursement of attorneys fees and costs.
 
 
 11
 Employers and Tri-World filed cross-motions for summary judgment. On January 11, 1995, the district court granted Employers' motion for summary judgment and denied Tri-World's motion. On January 12, 1995, the court entered declaratory judgment in favor of Employers.
 
 II
 
 12
 Submission of this case was withdrawn pending this court's en banc decision in Geico v. Dizol, No. 95-17393 (Slip op. January 13, 1998). Although neither the parties nor the district court questioned whether the district court should have exercised its discretionary jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this court's decisions in American Nat'l Fire Ins. Co. v. Hungerford, 53 F.3d 1012 (9th Cir.1995), and Employers Reinsurance Corp. v. Karussos, 65 F.3d 796 (9th Cir.1995) suggested that we might be obligated to sua sponte raise the question of whether the district court abused its discretion in retaining jurisdiction. Our decision in Geico, however, resolved this issue. When no party objects to the district court's entertainment of a declaratory judgment action over which the district court has constitutional and statutory jurisdiction, the district court is not obligated to sua sponte address whether jurisdiction should be declined. Further, this court is not required, sua sponte, to decide whether the district court abused its discretion in retaining jurisdiction where no party made such an objection. Slip op. at 235. We therefore decline to address the issue in the case at hand.
 
 III.
 
 13
 The district court's grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 94 F.3d 1194, 1197 (9th Cir.1994).
 
 A.
 
 14
 As a threshold matter, Tri-World argues for the first time on appeal that the district court should have applied Wisconsin law rather than California law. Before the district court, Tri-World asserted that California law applied. Thus, not only is this a new issue, but Tri-World has switched positions on appeal. In any event, the district court did not err in applying California law. In diversity cases, federal courts must follow the conflict of law rules prevailing in the forum state. Klaxon Co. v. Stantor Elec. Mfg. Co., 313 U.S. 487, 494 (1941). California's conflict of law rules provide that the forum generally should apply its own substantive law unless a party timely invokes the law of a foreign state. Hurtado v. Superior Court, 522 P.2d 666, 670 (Cal.1974). Since no party invoked any law other than that of the forum, the district court properly applied California law. Moreover, there appears to be no conflict between California and Wisconsin law. California and Wisconsin insurance law are similar in all material respect; Wisconsin law is no more favorable to Tri-World than California law for purposes of this appeal.
 
 B.
 
 15
 The Errors and Omissions Policy issued by Employers to Tri-World includes coverage for negligent conduct by Tri-World in conducting its business. The conspicuous, plain language of the exclusion endorsement, however, excludes from coverage "any claims resulting from the insolvency or bankruptcy of insurance companies." The Johars and Ericksons contend that their claim that Tri-World failed to procure insurance from a solvent company and failed to warn them that Philadelphia was not a member of CIGA, is one that falls within the Errors and Omission policy. Employers contends that the Johars' and Ericksons' claims are excluded by the insolvency exclusion endorsement. We agree with Employers.
 
 
 16
 Tri-World's alleged negligence in failing to investigate took place prior to Philadelphia's insolvency. However, there was no injury giving rise to a cause of action until Philadelphia became insolvent and thus unable to defend the Suarez action. In the absence of Philadelphia's insolvency, there could be no loss; no cause of action accrued unless and until Philadelphia became insolvent. The insolvency exclusion therefore covers the Johar's and Erickson's breach of duty claim.
 
 
 17
 No California court appears to have construed a similar insolvency exclusion provision in an insurance professional's errors or omissions policy. However, most cases in other jurisdictions construing such an exclusion provision have found that the provision barred negligence claims comparable to that in the instant case. A closely analogous situation was presented in St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc., 320 S.E.2d 385 (Ga.App.1984). An insurance agency, Cohen-Walker, was sued for the alleged negligence of an agent after a health insurer, from whom the agent had procured medical insurance for a client, became insolvent. The client claimed that the Cohen-Walker agent failed to verify whether the insolvent health insurer was licensed to do business, and failed to investigate its financial status. The insurance agency's errors and omissions policy excluded coverage for any claims "resulting from the inability of an insurance company to pay its debts." Id. at 387. The Cohen-Walker court held that the insolvency exclusion was "clear and unambiguous" and barred coverage for negligence claims against the agent. Id. at 388. The court reasoned that although the agent's alleged negligence may have predated the insolvency, the client "would have no right of recovery against Cohen-Walker if the recommended insurance company had been financially able to pay his claim." Id. Because the "injury giving rise to [the client's] cause of action was the recommended insurance company's inability to pay his claim for medical and hospital expenses apparently due to said company's insolvency," the claim was excluded. Id.; see also Barron v. Scaife, 535 So.2d 830 (La.App.1988) (insolvency exclusion provision bars coverage for claim of alleged negligence of insurance broker); Transamerica Ins. Co. v. South, 975 F.2d 321 (7th Cir.1992) (same) (applying Illinois law); cf. State Farm Fire & Casualty Co. v. Camara, 133 Cal.Rptr. 600, 603-04 (App.1976) (injury from negligent design of dune buggy not covered under policy because it was completely dependent upon occurrence of an excluded risk, the use of the vehicle). But see St. Paul Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223 (Ky.1994) (holding that insolvency exclusion was ambiguous and would not bar coverage because it conflicted with policy's promise to cover an insurance agent's negligent acts).[1]
 
 C.
 
 18
 Next, Tri-World asserts that the exclusion provision should pertain only to those claims resulting from insolvency where the insurance broker knew the company was insolvent, but fraudulently failed to disclose this information. This reading is not supported by the language of the exclusion, which covers "any claims" resulting from insolvency. Cf. ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co., 22 Cal.Rptr.2d 206, 218 (App.1993) (holding that a "pollution exclusion" provision barred all claims pertaining to alleged pollution, regardless of the source of the pollution, i.e., that it did not apply only to pollution caused by the wrongful misconduct of the insured). Moreover, even apart from the insolvency exclusion, claims of wilful misconduct are not covered by the policy--only negligence claims are covered. If the insolvency exclusion provision excludes only claims for wilful misconduct, the exclusion provision would be surplusage.
 
 D.
 
 19
 Tri-World further contends that barring coverage for the negligence claims would be against public policy because a California statute[2] provides that every liability insurance policy shall provide that the bankruptcy or insolvency of the insured shall not diminish the insurer's liability to third parties. See Cal. Ins.Code § 11580. This statute has no application to the facts of this case. The insolvent entity, Philadelphia, is not insured by Employers.[3] There is no violation of public policy in holding Tri-World liable for its own alleged negligence with respect to claims arising out of Philadelphia's insolvency rather than transferring that liability to Employers.
 
 E.
 
 20
 Finally, Tri-World contends that the policy is ambiguous because it does not define "insolvency." Even if true, this is irrelevant on the facts of this case. Tri-World and Employers have stipulated that Philadelphia is "insolvent" and that Philadelphia ceased providing coverage and a defense in the Suarez action because of its insolvency.
 
 IV.
 
 21
 Because all of the allegations in the Johar and Erickson complaints fall squarely within the insolvency exclusion, there is no potential for coverage and thus no duty to defend. See Montrose Chemical Corp. v. Superior Court, 861 P.2d 1153, 1160 (Cal.1993). We accordingly AFFIRM.
 
 
 
 **
 Honorable Jane A. Restani, United States Court of International Trade, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Tri-World contends that the Johar and Erickson complaints should be covered by its errors and omissions policy because the complaints allege Tri-World's negligence, which is covered by the policy. This argument ignores the existence of the insolvency exclusion. If not for the insolvency exclusion, the negligence claims against Tri-World would be covered by the policy, and thus Employers would have a duty to defend the Johar and Erickson complaints in their entirety. However, the idea behind an exclusion is that it excludes claims that would otherwise be covered. Cf. California Ins. Guarantee Ass'n v. Wood, 266 Cal.Rptr. 250, 252 (Ct.App.1990) ("An insurer can exclude coverage by language which is conspicuous, plain and clear."). In light of the insolvency exclusion, negligence claims against Tri-World resulting from the insolvency of insurers whose coverage it procured for its customers are not covered under the policy
 
 
 [2]
 Tri-World's public policy argument is directed to a Wisconsin statute. However, California law applies, and the insurance statutes are similar. We therefore assess Tri-World's arguments in the context of the comparable California statute
 
 
 [3]
 Rather, the statute means, for example, that if Tri-World were to become insolvent or bankrupt, the Employers policy would remain in effect during the policy period to cover third party claims